**Dated: November 18, 2021
The following is ORDERED:**

_____
**M. Ruthie Hagan
UNITED STATES BANKRUPTCY JUDGE**

_____

THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| In re **Carnita Faye Atwater** Debtor | Case No. 20-22880 Chapter 7 |

| | |
|---|---|
| Scott B. Peatross     Plaintiff, v. Carnita Faye Atwater,     Defendant. | Adv. Pro. 20-00131 |

| | |
|---|---|
| Scott B. Peatross     Plaintiff, v. Carnita Faye Atwater,     Defendant. | Adv. Pro. 20-00133 |

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT AS CALLED FOR BY FED. R. BANKR. P. 7037(b)(2)(A)**

THIS MATTER CAME ON TO BE HEARD on September 1, 2021, upon the Plaintiff's Motion: (1) for Order Compelling Defendant, for the Fourth Time, to Comply with Orders Requiring Her to Respond Completely to Discovery Requests, (2) Order Compelling Defendant to Comply with Prior Order for Inspection of Personal Property; and (3) "Further Just Orders," as Called for by FED. R. BANKR. P. 7037(b)(2)(A) and/or 11 U.S.C. § 105(a) ("Fourth Motion to Compel") [Case No. 20-22880, DE 140; AP 20-00131, DE 71; AP 20-00133, DE 73]; Defendant's Court-Ordered Supplemental Reponses to Interrogatories [Case No. 20-22880, DE 155; AP 20-00131, DE 79; AP 20-00133, DE 81], the statements and arguments of counsel for both parties, and upon the entire record in this cause.  Plaintiff has moved the Court for sanctions against Defendant, specifically default judgment, for Defendant's conduct during discovery.

The issue before the Court is whether Defendant's conduct during discovery warrants default judgment as a discovery sanction where Defendant has repeatedly violated this Court's orders compelling non-evasive and complete discovery responses.   The Court believes it does.  Although drastic, such a sanction is appropriate under the circumstances.  Based on the foregoing, the Court finds that case-terminating sanctions in the form of default judgment on all counts in Plaintiff's Complaint to Determine Dischargeability ([AP 20-00131, DE 1]) and Complaint Objecting to Discharge ([AP 20-00133, DE 1]) against Defendant are warranted.

**Jurisdiction**

Plaintiff filed these two complaints under 11 U.S.C. §§ 523(a)(2), (4) and (6) and 727(a)(2), (a)(3), (a)(4) and (a)(5), and FED. R. BANKR. P. 7001(4) and (6).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (J).  This Court has jurisdiction to decide pretrial matters, such as a motion to compel, in accordance with 28 U.S.C. §§ 1334(b) and 157(b)(1).  The following constitutes the Court's findings and conclusions pursuant to FED. R. BANKR. P. 7052.

2

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant was the in-home caregiver to Dr. Alys Lipscomb ("Dr. Lipscomb") until Dr. Lipscomb's death on May 21, 2014. Four years later, Plaintiff obtained a judgment from the Probate Court of Shelby County, Tennessee in case number PR-1541 against Defendant in the amount of $2,285,078.20. The same court awarded attorney's fees for Plaintiff against Defendant in the amount of $210,755.00, which makes the total amount owed to Plaintiff by Defendant $2,495,833.20 (the "Probate Judgment").

Defendant then appealed the Probate Judgment to the Tennessee Court of Appeals, and the Court of Appeals affirmed the Probate Court's decision on April 1, 2020. *See In re Estate of Lipscomb*, No. W2018-01935-COA-R3-CV, 2020 WL 1549596 (Tenn. Ct. App. April 1, 2020) (slip op.). Defendant subsequently appealed the Court of Appeals decision to the Supreme Court of Tennessee. Prior to any determination by the Supreme Court of Tennessee (or any briefing), Defendant filed her Chapter 13 bankruptcy petition on May 19, 2020 (Case No. 20-22880), which stayed the appeal pending before the Supreme Court of Tennessee.[1] *See* 11 U.S.C. § 362. Defendant later voluntarily converted the Chapter 13 bankruptcy case to a case under Chapter 7 on July 21, 2020 [Case No. 20-22880, DE 27]. On October 23, 2020, Plaintiff filed an adversary complaint against Defendant alleging non-dischargeability of certain debts under 11 U.S.C. § 523(a)(2), (4) and (6) of the Bankruptcy Code (the "523 Complaint") [AP 20-00131, DE 1]. Defendant filed her answer to the 523 Complaint on November 20, 2020 [AP 20-00131, DE 7]. Likewise, on October 26, 2020, Plaintiff filed an adversary complaint objecting to discharge under 11 U.S.C. § 727 of the Bankruptcy Code (the "727 Complaint") [AP 20-00133, DE 1]. Defendant filed her answer to the 727 Complaint on November 24, 2020 [AP 20-00131, DE 7].

---

[1] On June 30, 2020, the Clerk of the Appellate Courts, James M. Hivner, issued a "Notice-Order-Staying Appeal Due to Bankruptcy." [ Bankr. Adv. Proc. 20-131, DE 36-1].

Nearly a year later, these adversary proceedings remain stalled at the discovery stage, and the stall stems from Defendant's repeated discovery violations, including her failure to sufficiently respond fully to discovery requests, ultimately violating this Court's orders compelling discovery again and again.

On March 26, 2021, the Court granted Plaintiff's first motion to compel ("First Motion") due to the insufficiency of Defendant's discovery responses. Granting the First Motion, the Court ordered the Defendant to file and serve by March 30, 2021, "complete answers to Plaintiff's First Request for Production of Documents (AP 20-00133, DE 8)" and to "produce all documents requested therein that are within Defendant's possession, custody, or control, as set forth in FED. R. BANKR. P. 7034(a)(1)" and to file and serve by March 30, 2021, "complete answers to Plaintiff's First Set of Interrogatories in Adversary Proceeding 20-00131 (AP 20-00131, DE 9) and Plaintiff's First Set of Interrogatories in Adversary Proceeding 20-00133 (AP 20-00133, DE 9)." *See* Order Granting in Part Motion to Compel Defendant to Answer Interrogatories, to Compel Defendant to Answer Requests for Production and Produce Documents Requested Therein, and Awarding Attorney Fees and Expenses and/or Other Sanctions (AP 20-00131, DE 33 and AP 20-00133, DE 36). Defendant failed to comply.

Thereafter, Defendant's defiance resulted in Plaintiff's Second Motion to Compel Discovery ("Second Motion"). *See* AP 20-0131, DE 45; AP 20-00133, DE 46. Due to Defendant's failure to comply with the Court's Order and upon Plaintiff's request for "further just orders" under FED. R. BANKR. P. 7037(b)(2)(A), the Court granted Plaintiff's Second Motion and entered a Second Order on May 17, 2021, compelling Defendant to comply with discovery and awarding reasonable attorney's fees and expenses as a discovery sanction. *See* AP 20-0131, DE, 56; AP 20-00133, DE 58.

Defendant's pattern of failing to comply with this Court's orders and failure to cooperate during discovery continued. Plaintiff filed a Third Motion to Compel Discovery specifically requesting a default judgment as a discovery sanction ("Third Motion"). *See* Case No. 20-22880, DE 109; AP 20-0131, DE 61; AP 20-00133, DE 63. Thereafter, the Court entered a Third Order Compelling Discovery ordering Defendant to fully respond to numerous interrogatories. *See* AP 20-00131, DE 75; AP 20-00133, DE 77. However, having found that Defendant violated two of its prior orders, but unconvinced that Defendant's conduct had yet warranted imposing default judgment as a sanction, the Court: (1) imposed a prohibition against offering evidence "within the scope of Plaintiff's Document Request Numbers 1-6, 9-12, 16-17, 21-26, 28-29 (AP 20-00133, DE 8);" (2) issued a monetary sanction for fees and expenses occurred in obtaining the Order; (3) expressly warned Defendant of the possibility of default judgment (AP 20-00131, DE 61; AP 20-00133, DE 63); (4) and gave Defendant "*one last opportunity* to comply with the Court's orders and pending discovery." *See* AP 20-00131, DE 75; AP 20-00133, DE 77.

At the outset in the Court's First Order Compelling Discovery, the Court noted that "Defendant's Responses to Interrogatories and her Responses to Requests for Production [were] evasive, incomplete, and seriously deficient in numerous respects." *See* Order Compelling Defendant to Comply with Prior Order Requiring Her to Answer Completely All Interrogatories and Requests for Production and to Produce All Documents Requested Therein and Awarding Plaintiff His Reasonable Attorney Fees and Expenses (AP 20-00131, DE 56 and AP 20-00133, DE 58). Yet and still, Defendant's pattern of defying this Court's orders continued. On August 9, 2021, Plaintiff filed a Fourth Motion to Compel, again urging this Court to impose default judgments in these adversary proceedings, which is presently before this Court ("Fourth Motion"). *See* AP 20-00131, DE 71; AP 20-00133, DE 73. Upon examining Defendant's most recent Court-

ordered supplemental responses, the Defendant's pattern of failing to comply with this Court's orders remains consistently defiant. Defendant's deliberate indifference towards her discovery obligations and repeated failure with this Court's prior discovery orders leaves this Court perplexed.

Plaintiff has now filed three prior motions to compel discovery responses and Defendant's established habit of providing incomplete and evasive discovery responses remains unchanged. Plaintiff avers that "Defendant's ignominious record of bad faith and disregard for her obligations under the Bankruptcy Code and the orders of this Court has reached a new level." *See* AP 20-00131, DE 71; AP 20-00133, DE 73. The Court agrees. Given Defendant's uncooperative posture during these adversary proceedings, Plaintiff has asked for sanctions, including the drastic measure of default judgment under Bankruptcy Rule 7037(b)(2)(A).

## CONCLUSIONS OF LAW

When a party violates orders compelling discovery, the trial court has broad discretion to determine the appropriate sanction, the most severe of which is "rendering a default judgment against the disobedient party." *See* FED. R. CIV. P. 37(b)(2)(A)(vi); FED. R. BANKR. P. 7037; *see also Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir.1990); *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153-54 (6th Cir. 1988). In addition, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C); FED. R. BANKR. P. 7037.

When considering whether to invoke default judgment as a discovery sanction under Rule 37, the Sixth Circuit considers the following four factors, none of which is dispositive:

6

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a [default judgment] is whether less drastic sanctions were first imposed or considered.

*Freeland v. Amigo,* 103 F.3d 1271, 1277 (6th Cir.1997) (citing *Reg'l Refuse Sys. Inc.*, 842 F.2d at 154–55); *see also Collins v. IRS (In re Opus Med. Mgmt., LLC)*, Adv. Proc. No. 16-00075, 2017 Bankr. LEXIS 3449 (Bankr. W.D. Tenn. Oct. 4, 2017).  While "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases," *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir.1983), it is well established that a federal court has the inherent authority to grant default judgment when the circumstances warrant. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991), *reh'g denied.* ("A primary aspect of [a federal court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."); *see also Media Capital Assocs., LLC v. Taylor* (*In re Taylor*), 370 B.R. 122 (E.D. Mich. 2007) (upholding bankruptcy court default judgment as a discovery sanction where defendants' failure to comply with an order compelling discovery in a dischargeability adversary proceeding was long overdue and discovery responses appeared to be responsive, but were lacking in detail).

## ANALYSIS

Plaintiff contends that Defendant has: (1) failed to respond to Interrogatories or Requests for Production served and filed in December 2020 and January 2021 despite her clear obligations to do so under the Federal Rules of Bankruptcy Procedure and three prior, unequivocal Orders of this Court under Fed. R. Civ. P. 37(b)(2)(A)(ii); (2) exhibited "contumacious conduct" by violating numerous Court orders; and (3) despite this refusal, Defendant has promptly objected to Plaintiff's

7

affidavits concerning attorney fees and expenses that this Court has ruled Plaintiff is entitled to recover relating to prior motions to compel. Defendant has offered no excuse or justification for such failure and has not filed any written objection or a response to Plaintiff's Fourth Motion to Compel.

### 1. Willfulness, Bad Faith and Fault

As to the first factor, the Court considers whether Defendant's failure to cooperate in discovery was the result of willfulness, bad faith, or fault. Imposing default judgment as a sanction due to a party's abusive discovery practices requires a finding of "willfulness, bad faith, or fault." *See Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008); *see also Bank One*, 916 F.2d at 1073. In other words, the disobedient party to be sanctioned has displayed "either an intent to thwart judicial proceedings or a reckless disregard for the effect of his [or her] conduct on those proceedings." *Schafer*, 529 F.3d at 737 (citation omitted). Bad faith may be inferred when a party is consistently uncooperative during discovery.[2] *Bank One*, 916 F.2d at 1079. "As the Sixth Circuit has explained, repeated noncompliance with court-sanctioned discovery requests suggests willfulness, bad faith, or fault." *Allstate Ins. Co. v. Awan & Assocs. P.C.,* No. 11-11988, 2013 WL 1340142, at *5 (E.D. Mich. Apr. 3, 2013) (citing *Bank* One, 916 F.2d at 1079).

Plaintiff contends that Defendant has failed to provide "complete" responses despite the Court's orders to do so. Defendant offers little to no explanation as to why she has failed to comply

---

[2] Rule 37(a) expressly provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Specifically, under Rule 37(d) a court may sanction a party when that party's evasive or incomplete answers to proper interrogatories impede discovery. FED. R. CIV. P. 37(a)(3) and 37(d); *see Jackson v. Nissan Motor Corp. in USA,* 888 F.2d 1391 (6th Cir.1989). As this Court has reminded Defendant, parties "have a duty to provide true, explicit, responsive, complete and candid answers to [discovery]" in a civil litigation. *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 61 (D. D.C. 1984) (citations omitted); *see* FED. R. BANKR. P. 7026; FED. R. CIV. P. 26(g). Providing false or incomplete discovery responses violates the Federal Rules of Civil Procedure. *Wagner v. Dryvit Sys., Inc.,* 208 F.R.D. 606, 609-10 (D. Neb. 2001) (citations omitted). Relevant here, Defendant's evasive and incomplete responses are tantamount to not responding at all and violate the rules of discovery.

8

with and cooperate during discovery. In the Court's most recent Order to compel [AP 20-00131 DE 75, AP 20-00133 DE 77], the Court went to great length to detail and provide further direction as to how Defendant's responses were lacking in detail, identifying deficiencies in two document requests and eleven interrogatories (Interrogatories 1, 2, 3, 4, 5, 6, and 7 in AP 20-00131 and 1, 5, 6, and 10 in AP 20-00133). Defendant's responses remain evasive and incomplete. Interrogatories 1 (AP 20-00131, DE 28), and 5 (AP 20-00133, DE 31) provide a representative sample:

*Nonresponsive and/or Evasive Responses Relating to AP 20-00131 Discovery*

INTERROGATORY NO. 1: Describe in detail each item that Museum or Foundation owned, purchased, received, or had possession, custody, or control of, and each Museum Item (as defined in the Instructions and Definitions Section above) that you owned, purchased, received, or had possession, custody, or control of, on January 1, 2013. Include in your description of each item, the type of item (including, if know[sic], the manufacturer and the style or model name or number); its approximate age; when and from whom you, Museum, or Foundation acquired it; its condition at that time; its cost if it was purchased; its value if it was not acquired by purchase or if its value was different from its cost; when, why, to whom, and for what consideration you, Museum, or Foundation sold, donated, or otherwise deaccessioned it; what person or entity owned such item or had possession, custody, or control of it as of May 19, 2020, when this bankruptcy case was filed; its condition and value as of May 19, 2020; how you determined such value; and if you claim that you, Museum, or Foundation purchased, received, or had possession, custody, or control of it at one time but did not own it, explain why it was not owned by you, Museum, or Foundation.

RESPONSE NO. 1: The African American International Museum Foundation do not own any museum items, displace (sic) cases, museum furniture, painting, artworks, statues, display stands, or any other furniture that was donated or purchased for the museum. The foundation is not the museum. The museum inventory list that I had was sold in the storage sale at U-Storage. The inventory list is the duty of the New Chicago CDC. No artifacts was (sic) sold. New Chicago CDC has the rights to govern the artifacts the way they see fit. The artifacts was not inventoried in the bequest donation form to the New Chicago CDC. The wording of how the museum artifacts, furniture, display, etc. was transferred was in the bequest document. At this point, that is the business of the New Chicago CDC.

The August 13, 2021 Court Order stated:

> Defendant's response fails to identify any Museum Item that *Defendant* (or Foundation) owned, purchased, received or had possession, custody, or control of, on January 1, 2013. Defendant's response further fails to include any "description of each item, the type of item (including, if known, the manufacturer and the style or

9

>model name or number); its approximate age; when and from whom you, Museum, or Foundation acquired it; its condition at that time; its cost if it was purchased; its value if it was not acquired by purchase or if its value was different from its cost; when, why, to whom, and for what consideration you, Museum, or Foundation sold, donated, or otherwise deaccessioned it; what person or entity owned such item or had possession, custody, or control of it as of May 19, 2020, when this bankruptcy case was filed; its condition and value as of May 19, 2020; how you determined such value; and if you claim that you, Museum, or Foundation purchased, received, or had possession, custody, or control of it at one time but did not own it, explain why it was not owned by you, Museum, or Foundation."

[AP 20-00131, DE 75, at 5-6; AP 20-00133, DE 77, at 5-6]. Defendant's supplemental response submitted on the August 31, 2021 Court-ordered deadline reads:

RESPONSE NO. 1: As of 2013, the African American International Museum Foundation did, and to this day does not, own any museum items, display cases, museum furniture, painting, artworks, statues, display stands, or any other furniture that was donated or purchased for the museum. The foundation is not the museum. The museum inventory list that I had was sold in the storage unit auction at U-Storage. From my memory, these are some of the items that I can recall that were in the U-Storage:

>a) Life-size Taxidermy Buffalo – Buffalo Soldier's Museum artifacts
>b) Half-size Taxidermy Buffalo
>c) Numerous pianos for the Blues Museum
>d) Numerous containers of African artifacts
>e) New reproduction picture frames
>f) Old frames – numerous containers
>g) Museum easels
>h) Museum stands and letterings
>i) Antiques items – slop jars, old irons, old house, large agricultural items,
>j) NAACP items
>k) Buffalo Soldier painting and prints
>l) Antique schoolhouse – life-size
>m) Old furniture for museum dioramas – large pieces.
>n) Museum statues – large, medium and small
>o) African textiles – numerous containers
>p) Antique farm implements – Large plows, hayrack, etc.
>q) Military items from World War I, II, Korean War, etc.
>r) International shoes for museum
>s) Black Invention Museum artifacts – several storages – shoe last, traffic lights, etc.

10

    t) Large museum artwork painted panels – purchased over in Marion Arkansas over 20 years ago
    u) 50 Church pews – purchased from a church in Mississippi
    v) Miscellaneous

[AP 20-00131, DE 79; AP 20-00133 DE 81]. Defendant's response is unresponsive[3] in that it lacks at minimum, any "description of each item, the type of item (including, if known, the manufacturer and the style or model name or number); its approximate age; when and from whom you, Museum, or Foundation acquired it; its condition at that time; its cost if it was purchased; its value if it was not acquired by purchase or if its value was different from its cost" as of May 19, 2020. Defendant's supplemental response to Interrogatory No. 2 filed with the Court on August 31, 2021, does the same. *See* AP 20-00131, DE 79; AP 20-00133, DE 81. A sophisticated, art collector such as Defendant is surely able to at least provide the Court and Plaintiff with an approximate value of the items listed, having amassed years of experience in owning, collecting, and selling items of the kind.

*Nonresponsive and/or Evasive Responses Relating to AP 20-00133 Discovery*

  INTERROGATORY NO. 5: With respect to any fee, charge, commission, or other compensation that you, Museum, Foundation, New Chicago CDC, or Kukutana Museum received in connection with any exhibition of Museum Items from January 1, 2013, through the present, regardless of whether such compensation was received as a rental fee, payment for conducting tours, donation, gratuity, or something else, describe the date when such compensation was paid, who paid it, who received it initially and, if different ultimately, why it was paid, and whether or not you initially or ultimately received it or any part of it.

  RESPONSE NO. 5: I received cash admission fees for conducting tours of the items held by the Kukutana Museum. I am not aware of any compensation received by the New Chicago CDC.

  The August 13, 2021 Court Order stated:

> Defendant's response is evasive and nonresponsive. Defendant is ordered to supplement her response with more detailed information. Defendant is ordered to fully respond to Interrogatory

---

[3] Further, the Court heard testimony that Defendant estimated 5,000 artifacts were probably lost, but Defendant could only recall items a-v. This is simply insufficient.

11

> No. 5 by August 31, 2021. Any further delay in fully responding to discovery will likely result in more punitive sanctions including barring Defendant from using or offering into evidence any documents, records or other information that she did not provide to Plaintiff on or before August 31, 2021. Furthermore, the Court will further consider Plaintiff's request for default judgment in AP 20-00133 (in addition to any other potential sanctions).

[AP 20-00131, DE 75, at 11; AP 20-00133, DE 77, at 11]. Defendant's Court-ordered supplemental response reads:

RESPONSE NO. 5: I received cash admission fees for conducting tours of the items held by the Kukutana Museum. I am not aware of any compensation received by the New Chicago CDC.

As illustrated, Defendant's response merely restates her prior response, which the Court deemed evasive and nonresponsive in its August 13, 2021 Order. Defendant failed to supplement her response with more detailed information in violation of the Court's Order.

### *September 1, 2021 Hearing*

During the September 1, 2021 hearing, Plaintiff's counsel demonstrated difficulty in acquiring responsive information and documents from Defendant. Plaintiff's counsel provided evidence that Defendant failed to disclose information and documentation relating to all storage units in which she owned or held prior to bankruptcy (and even post-petition). *Compare* Response to Interrogatory No. 12 [AP 20-00133, DE 31],[4] *with* Exhibits A and B to Supplement to Plaintiff's Motion for an Order Requiring Defendant and New Chicago CDC to Comply with Prior Order

---

[4] INTERROGATORY NO. 12: Identify by name and address each and every storage unit you, Museum, or Foundation has rented at any time from January 1, 2010, through the present, and state the time period when it was rented, who the lease or contract showed as the renter, how much was paid in rent, describe in general the type and number of items stored at each storage unit, and describe what happened to the contents of each storage unit, including whether or not the contents were sold at auction for unpaid storage charges.

RESPONSE NO. 12: Germantown Storage, Simply Storage, All Time Storage, U-Storage – 22 Storage was sold for unpaid storage charges. This company was under another name when 12 of the storages were sold, Extra Storage. Storages have been in Carnita Atwater, Carnita Atwater-Jack, and AAIMF. Museum storage was and are (sic) the responsibility of the New Chicago CDC and that is their business affairs.

Allowing Inspection of Museum Artifacts Located at New Chicago CDC, Etc. [AP 20-00131, DE 80]. Defendant testified about her efforts to obtain other requested (and ordered) information, but in the end, failed to do what was ordered by the Court. The relevant testimony included:

> COUNSEL: So, you asked the Tennessee Supreme Court for the records and they gave them to you on a CD-ROM. Is that part of what you're saying, and you then sent it to a lawyer in Jackson, Mississippi?
>
> ATWATER: Yes, to see [if they] would [] help me with my case. That's correct.
>
> COUNSEL: Alright. Have you looked at anything that was on the CD-ROM?
>
> ATWATER: No, I didn't.
>
> COUNSEL: Well, if your position is that you gave certain records that are responsive to discovery to Probate Court and they were made trial exhibits and your further testimony is that you got the records on a CD ROM from the Tennessee Supreme Court, why haven't you looked at those records and furnished copies of what's relevant?
>
> ATWATER: That was before the fact; before I filed bankruptcy.
>
> . . .
>
> COUNSEL: Well, I'm sorry. Let's just pursue that if we may. It doesn't matter when, Dr. Atwater, you got those documents . . . once you filed bankruptcy why didn't you ask for the CD-ROM back or communicate with the lawyer in Jackson, Mississippi to get copies of documents that are relevant?
>
> ATWATER: I asked for the CD-ROM back, but at that time the attorney had moved to Louisiana. Then, I called [and] the person moved to uh Portland. I never received the CD-ROM back.
>
> COUNSEL: Did you ask for another CD-ROM with the pertinent documents?
>
> ATWATER: No, I did not. I went to Alpha Reporting to see could I get the transcript from them.
>
> COUNSEL: And they said no?
>
> ATWATER: They said attorney Ken Jones had removed all the files from their records.
>
> COUNSEL: They didn't have copies and could not produce copies.
>
> ATWATER: They did not have copies.

13

COUNSEL: Let me ask you another question Dr. Atwater. Did you ask for these trial exhibits from the lawyer that represented you in probate court, or two lawyers I believe?

. . .

ATWATER: Mr. Michael Floyd told me to go to the Probate Court and I went there and they gave me copies, but I gave that to the Probate Court what I had, I'm sorry to the Bankruptcy Court.

COUNSEL: And what documents are those?

ATWATER: The ones they printed out for me. That's what I gave to the Bankruptcy Court.

COUNSEL: Well

ATWATER: And you should have a copy of that.

COUNSEL: Let me ask it this way. Did you provide copies to me?

ATWATER: Everything I have as exhibits, I provided copies to you or my attorney. I didn't directly go through you; I went through my attorney.

COUNSEL: Well, let me just state for the record your Honor, I am unaware of documents from the Probate proceeding that Dr. Atwater seems to be saying she furnished to her lawyer and her understanding is that they were furnished to the Court and me. I would call upon her and her attorney to identify those documents and if they are responsive, why aren't they referred to in these responses? I mean obviously.

ATWATER: Everything that I have submitted to the Court. I wrote a letter listing everything that I gave the court . . .

COUNSEL: Well, I hear you Dr. Atwater, but the real question is where are the documents that are responsive to these requests? Are you saying that you have furnished to the Court documents that are responsive to these requests?

ATWATER: Every document that I had in my possession.

COUNSEL: Excuse me. Yes or no question.

ATWATER: I have given you everything that I have had in my possession.

COUNSEL: I'll ask it one more time. Dr. Atwater, are you saying that you have produced documents responsive to these requests? You've provided them to the court? Yes or no?

ATWATER: Yes, to my ability that was in my presence.

14

The testimony went on but ultimately reflected Defendant's failure to request an additional copy of the CD-ROM which she believed contained documents that would reflect relevant checks and receipts which Plaintiff is seeking. This only solidified Defendant's evasive posture. As of this opinion, the Court is unaware of the production of responsive documents in question as directed in the August 13, 2021 Order. Instead, her Court-sanctioned response states: "I have no possession of, or control over, any documents in addition to the ones provided to date." [AP 20-00131, DE 79 at 1; AP 20-00133, DE 81 at 1]

The Court has read closely Defendant's responses and her testimony in court only further exhibited Plaintiff's plight in obtaining complete and non-evasive discovery responses. Having examined the supplemental responses to Plaintiff's interrogatories, they remain "evasive and incomplete" and show a reckless disregard for the effect of her conduct on these proceedings.[5] Thus, again violating yet another Court Order. The Court concludes that Defendant's repeated noncompliance with this Court's ordered discovery sanctions leads the Court to infer willfulness. This factor weighs in Plaintiff's favor.

2. **Prejudice to Plaintiff**

Turning to the second factor, Defendant's delays in cooperating in discovery have prejudiced Plaintiff. Plaintiff argues that because of Defendant's disregard for her obligations under the Bankruptcy Code, "Plaintiff has been prejudiced by inordinate delay and expense, as well as by the inability to complete discovery." [AP 20-00131, DE 71 at 2; AP 20-00133, DE 73 at 2]. The time spent in this case alone towards four motions to compel has no doubt compounded Plaintiff's expenses, and yet, Plaintiff is no closer to being prepared for trial. This factor weighs

---

[5] The Court also heard circular testimony from Dr. Atwater that as "we developed the museum, we would bring items into the facility" and goes on to say she owned storages for over 30 years because she has "*owned* the museum for 30 years". *Compare* discovery responses in which Defendant attempts to place burden on the museum to respond to the business of the museum.

15

in favor of default judgment.

### 3. Fair Warning

Examining the third factor, the Court warned Defendant multiple times of the possibility of a default judgment in the August 13, 2021 Order. That same Order gave Defendant ample notice to rectify her delinquencies. Further, Plaintiff has requested the sanction of default judgment since the First Motion. Plaintiff's Fourth Motion filed on August 13, 2021 — while premature because no order compelling discovery had been violated by the August 31, 2021 deadline — as well as this Court's warnings that future violations could result in more drastic sanctions in its prior orders to compel put Defendant on notice of the potential consequences for future discovery violations, including the default judgment sanction of last resort.

### 4. Alternative Sanctions

Finally, the fourth factor to consider is whether less drastic sanctions were imposed or considered before ordering default judgment. This factor is met. Plaintiff points out to the Court that "prior warnings and orders awarding attorney fees have proven insufficient to convince Defendant to perform" her discovery obligations [AP 20-00131, DE 71 at 16; AP 20-00133, DE 73 at 16]. During these proceedings, no sanction to date has deterred Defendant's conduct. *See Bank One*, 916 F.2d at 1073.

In light of the conduct the Court has described herein, all factors support granting default judgment in Plaintiff's favor against Defendant under the Court's inherent authority and Rule 37. "The use of [default judgment] as a sanction for failing to comply with discovery . . . accomplishes the dual purpose of punishing the offending party and deterring similar litigants from misconduct in the future." *Peltz v. Moretti*, 292 Fed.Appx. 475, 478 (6th Cir. 2008) (quoting *Freeland v. Amigo,* 103 F.3d 1271, 1277 (6th Cir. 1997) (citing *Nat'l Hockey League v. Metro. Hockey Club,*

*Inc.*, 427 U.S. 639 (1976))). Defendant's conduct demonstrates that ongoing discovery in this action will be futile. After much patience, the Court is without any other tools to elicit the discovery needed for Plaintiff to fairly move forward in these adversary proceedings.

## CONCLUSION

Because the Court finds that Defendant's willful and repeated noncompliance with this Court's orders compelling discovery impermissibly frustrates these proceedings, the Court agrees with Plaintiff—default judgment against Defendant is an appropriate sanction. Plaintiff's motion for sanctions against Defendant (Case No. 20-22880, DE 140; AP 20-00131, DE 71; AP 20-0133, DE 73) is **granted.**

Plaintiff is entitled to recover at least some portion of his expenses, including reasonable attorney fees, that he was forced to incur in obtaining this order. *See* FED. R. CIV. P. 37(b)(2)(C). Plaintiff may file a request for those fees and expenses on or before **December 17, 2021.** A failure to file the request by that date will constitute a waiver by Plaintiff of any claim for fees and expenses. Defendant may file a response itemizing any objections to Plaintiff's request within seven (7) days after Plaintiff files the request. The Court will then consider the filings and determine the appropriate monetary sanction. The Court will assess the monetary sanction against Defendant only, and not against her attorney.

The Bankruptcy Court Clerk shall cause a copy of this Order and Notice to be sent to the following interested persons:

Plaintiff
Plaintiff's Attorney
Defendant
Defendant's Attorney
Chapter 7 Trustee
U.S. Trustee